AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| ZTE Flip Phone: Model Z320 (Gray/Black) | ) | 1:18MJ -274 |
| FCC ID: SRQ-Z320 | ) | |
| S/N: 329F66542057 | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attatchment A to the Affidavit.

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attatchment B to the Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 846. | Conspiracy to Distribute a Controlled Substance. |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Philip V. Brown, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/24/18

_____
*Judge's signature*

City and state: Cincinnati, OH

Hon. Karen L. Litkovitz, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONES DESCRIBED AS:** | **CASE NO.** |
| **HTC Desire: 99HAHW061-00  (Gray/White)**<br>**S/N: FA6B2BR00745**<br>**IMEI: 358869072819473** | **UNDER SEAL** |
| **Kyocera Flip Phone: Model E4281 (Gray/ Black)**<br>**FCC ID: V65E4281**<br>**HEX: 990 006 100 711 64** | |
| **Sanyo Qualcomm 3G: Model PLS-2400 (Black/ Gray)**<br>**FCC ID: AEZSCP – 24H**<br>**HEX: 062A4FA6 69** | |
| **ZTE Flip Phone: Model Z320 (Gray/Black)**<br>**FCC ID: SRQ-Z320**<br>**S/N: 329F66542057**<br>**IMEI: 860550031128443** | |
| **Located at the DEA Evidence Room**<br>**36 E. 7th Street, Suite 1900**<br>**Cincinnati, Ohio** | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Philip V. Brown, a Special Agent with the Drug Enforcement Administration (DEA),

being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— four electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since August 2010. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18, of the United States Code.

3.      I am currently assigned to the Cincinnati Resident Office of the DEA. I have received specialized training from the DEA, including the 19-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I have also received additional formal training from DEA to include the Basic Telecommunications Exploitation Program and the Internet Telecommunications Exploitation Program, which were specifically designed to assist agents in identifying and subsequently exploiting telephonic and internet related devices utilized in the commission of a Controlled Substance Act (CSA) violation.

4.      As a DEA agent, I have participated in over 50 criminal investigations and in the execution of over 50 search warrants seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code). These warrants covered the search of

locations to include: residences of drug traffickers and their co-conspirators/associates; drug manufacturing operations; and, stash houses used as storage and distribution points for controlled substances, as well as the search of Facebook profiles and email accounts from service providers such as Yahoo! and Google.

5.      Through my training and experience, I know that those involved in the illegal sale and distribution of narcotics often store in their cell phones and mobile devices, contact information for their associates so that they may stay in ready contact with their customers and source(s) of supply. Often the information stored in the contact list may be in the form of a code to conceal the true identity of the contact.

6.      Through my training and experience, I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of cellular telephones or use of multiple telephones or other devices, to avoid detection by law enforcement.

7.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      The property to be searched:

> **Subject Telephone 1:** HTC Desire: 99HAHW061-00 (Gray/White)
> S/N: FA6B2BR00745
> IMEI: 358869072819473

> **Subject Telephone 2:** Kyocera Flip Phone: Model E4281 (Gray/ Black)
> FCC ID: V65E4281
> HEX: 990 006 100 711 64

**Subject Telephone 3:** Sanyo Qualcomm 3G: Model PLS-2400 (Black/Gray)
FCC ID: AEZSCP – 24H
HEX: 062A4FA6 69

**Subject Telephone 4:** ZTE Flip Phone: Model Z320 (Gray/Black)
FCC ID: SRQ-Z320
S/N: 329F66542057
IMEI: 860550031128443

9.     **Subject Telephones 1** and **2** were located during a traffic stop of Phillip MCKELTON and **Subject Telephones 3** and **4** were subsequently seized pursuant to a search warrant of Phillip MCKELTON's residence. The above items are currently in the custody of DEA Cincinnati.

10.     The applied-for warrant would authorize the forensic examination of the **Subject Telephones** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11.     The Drug Enforcement Administration (DEA) is investigating an organization engaged in a conspiracy involving the suspected distribution of controlled substances, more specifically, cocaine, a Schedule II controlled substance, in violation of, inter alia, 21 U.S.C. § § 841(a)(1) and 846.

12.     On December 7, 2017, a Cincinnati Police Department Cooperating Defendant, hereinafter referred to as CD-1, conducted a controlled purchase of approximately five (5) ounces of cocaine from Frank CALLOWAY's middle man, Demba DIAWARA, at 2D Auto Sales located at 1717 Queen City Avenue, Cincinnati, Ohio. As a result of this controlled purchase and further investigation into CALLOWAY and DIAWARA, the DEA Cincinnati Resident Office and Cincinnati Police Department began a court authorized Title III wire interception on DIAWARA's cellular telephone beginning on February 27, 2018 and ending on March 28, 2018. Intercepted

phone calls between DIAWARA and CALLOWAY confirmed that CALLOWAY was DIAWARA's cocaine source of supply and led to court authorized Title III wire and electronic interception on CALLOWAY's cellular telephone beginning on March 29, 2018.

13.     During the DEA wire and electronic interceptions of CALLOWAY's cellular telephone, agents were able to identify Phillip MCKELTON and others as co-conspirators of CALLOWAY and DIAWARA in the illegal trafficking of cocaine. Specifically, on April 17 and 18, 2018, agents intercepted a series of text messages and a phone call between CALLOWAY and MCKELTON during which they agreed to meet at MCKELTON's residence. The intercepted communications, in combination with surveillance lead agents to believe that CALLOWAY and MCKELTON were involved in a drug transaction and that MCKELTON uses mobile phones in furtherance of a drug trafficking conspiracy.

14.     On April 17, 2018, at approximately 10:52 p.m., agents intercepted an incoming text from **Subject Telephone 1**, a phone utilized by Phillip MCKELTON to CALLOWAY. The text message is as follows:

| MCKELTON | YoA.m |
|----------|-------|

15.     I believe MCKELTON sent the above-referenced text message to CALLOWAY in order to meet with and purchase cocaine from CALLOWAY.

16.     On April 18, 2018, at approximately 7:40 a.m., Officer Waters observed CALLOWAY exit 2632 Fairhill Drive and depart the area in his white GMC Sierra truck. Agents monitored the GPS tracker on CALLOWAY's truck and noted that he stopped at the UDF gas station located on Blue Rock Road for approximately five (5) minutes.

17.     On April 18, 2018, at approximately 7:59 a.m., agents intercepted an incoming text message from MCKELTON, using **Subject Telephone 1** to CALLOWAY. The text message is as follows:

| MCKELTON | Yo |
|---|---|

18.     I believe MCKELTON sent the above-referenced text message to CALLOWAY in an attempt to let CALLOWAY know that MCKELTON was ready to meet with and purchase cocaine from CALLOWAY.

19.     At approximately 8:12 a.m., Officer Waters noted that CALLOWAY arrived at Fairfield Storage located on Pleasant Avenue. Agents later learned from management that CALLOWAY accessed the Fairfield Storage complex at 8:12 a.m., using the gate code for unit #768L. Agents further confirmed from the GPS tracker that CALLOWAY parked in the area of unit #768L after he entered the complex. At approximately 8:19 a.m., CALLOWAY exited Fairfield Storage again using the gate code for unit #768L.

20.     On April 18, 2018, at approximately 8:23 a.m., agents intercepted an outgoing text message from CALLOWAY to MCKELTON, using **Subject Telephone 1**. The text message is as follows:

| CALLOWAY | K |
|---|---|

21.     I believe the above-referenced text message sent from CALLOWAY to MCKELTON was confirmation that CALLOWAY was ready to meet with and distribute cocaine to MCKELTON. Shortly thereafter, surveillance observed CALLOWAY go into his suspected drug stash house and then drive to MCKELTON's residence. Moments later, MCKELTON was observed exiting his residence and entering CALLOWAY's vehicle. Less than a minute later, MCKELTON exited

CALLOWAY's vehicle and returned to his residence. Approximately one hour and fifteen minutes later, MCKELTON departed his residence and conducted what appeared to be a drug transaction with an individual later identified as Michael Livingston. Agents then followed Livingston until a marked police cruiser could conduct a traffic stop on Livingston's vehicle. During the course of this traffic stop, a state of Ohio certified canine clearly alerted to the presence of a narcotic odor emanating from Livingston's vehicle. During a probable cause search of the vehicle officers recovered approximately forty – three (43) grams of a substance that field tested positively for the presence of cocaine. Livingston was subsequently charged by state law enforcement with Possession and Trafficking in Cocaine. Based on the sequence of events, I believe that MCKELTON met with and received cocaine from CALLOWAY and that MCKELTON further re-distributed a portion of that cocaine to Michael Livingston. Furthermore, because we have MCKELTON using **Subject Telephone 1** in the coordination of receiving cocaine from CALLOWAY, I believe that MCKELTON uses multiple mobile phones, to include the other **Subject Telephones,** in furtherance of drug activity.

22.     Based on the wire and electronic communications between MCKELTON, using **Subject Telephone 1,** and CALLOWAY and the surveillance that followed, I believe that MCKELTON informed CALLOWAY that he needed an unknown quantity of cocaine. I believe that MCKELTON and CALLOWAY have an ongoing business arrangement that does not require MCKELTON to place a formal order with CALLOWAY. After receiving notice from MCKELTON, CALLOWAY visited Fairfield Storage unit #768L and then his suspected stash house located at 2673 Fairhill Drive to repackage and/or prepare MCKELTON's cocaine order. CALLOWAY then drove to MCKELTON's residence where he (CALLOWAY) provided MCKELTON with the unknown quantity of cocaine during their meet in the driveway. I believe

that MCKELTON then took the cocaine into 3014 Beaver Avenue where he re-packaged it for street level sales to his customers, including Michael Livingston.

23. On April 20, 2018, the Honorable Karen L. Litkovitz, United States Magistrate Judge signed an arrest warrant compliant for Phillip MCKELTON, who had been arrested on April 19, 2018. Furthermore, the Honorable Karen L. Litkovitz, United States Magistrate Judge signed a search warrant for MCKELTON's primary residence of 3014 Beaver Avenue, Cincinnati, Ohio on April 19, 2018.

24. On April 19, 2018 at approximately 5:37 p.m., Agents from the DEA Cincinnati Resident Office, the Cincinnati SWAT team, and officers from the Cincinnati Police Department executed a search warrant at MCKELTON's residence. MCKELTON was not located inside the residence at the time the search warrant was executed. Pursuant to the search warrant at MCKELTON's residence, **Subject Telephones 3** and **4** were recovered and booked into Cincinnati Resident Office DEA Evidence Room located at 36 E. 7th Street, Ste. 1900, Cincinnati, OH.

25. On April 19, 2018 at approximately 6:07 p.m., members of the Ohio State Highway Patrol and Cincinnati Police Department executed a probable cause arrest on MCKELTON in the parking lot of the Summit Plaza Shopping Center located at 7733 Reading Road, Cincinnati, Ohio. During a search incident to arrest, officers recovered **Subject Telephones 1** and **2** which were subsequently booked into Cincinnati Resident Office DEA Evidence Room located at 36 E. 7th Street, Ste. 1900, Cincinnati, Ohio.

26. Based on the intercepted communications of MCKELTON using **Subject Telephone 1** to communication and coordinate with his drug source of supply, Frank CALLOWAY, I believe MCKELTON uses mobile phones in furtherance of a drug-trafficking conspiracy. Based on my training, experience and conversations with other law enforcement officers, I know that drug traffickers typically utilize multiple mobile phones in furtherance of a drug trafficking conspiracy.

For example, previous investigations of drug traffickers revealed that some individuals will use one mobile phone to communicate with their drug source of supply while utilizing another mobile phone to communicate with their customers. Therefore, because MCKELTON was found to be in possession of multiple mobile phones, I believe that these phones will contain evidence of a drug-trafficking conspiracy and I further believe that probable cause exists to search these phones.

## TECHNICAL TERMS

27.    Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed

and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly

available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. External Storage Device: An external storage device is a data storage device designed primarily to store and retrieve digital information and data including audio, video, or photographic files. External storage devices are often portable, and can include various features. Depending on the model, an external storage device may have the ability to store very large amounts of electronic data.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

28.     Based on my training, experience, and research, I know that these types of devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, and a GPS navigation device.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

30.     *Nature of* examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Telephones consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31.     *Manner of* execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<u>CONCLUSION</u>

I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Subject Telephones** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Philip V. Brown
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this __24__ day of April, 2018.

HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

<u>**ATTACHMENT A**</u>

The property to be searched:

**Subject Telephone 1:** HTC Desire: 99HAHW061-00  (Gray/White)
S/N: FA6B2BR00745
IMEI: 358869072819473

**Subject Telephone 2:** Kyocera Flip Phone: Model E4281 (Gray/ Black)
FCC ID: V65E4281
HEX: 990 006 100 711 64

**Subject Telephone 3:** Sanyo Qualcomm 3G: Model PLS-2400 (Black/ Gray)
FCC ID: AEZSCP – 24H
HEX: 062A4FA6 69

**Subject Telephone 4:** ZTE Flip Phone: Model Z320 (Gray/Black)
FCC ID: SRQ-Z320
S/N: 329F66542057
IMEI: 860550031128443

The above referenced items are currently located at the DEA Evidence Room, 36 E. 7th Street, Suite 1900, Cincinnati, Ohio.

This warrant authorizes the forensic examination of the Subject Telephones for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Subject Telephones described in Attachment A that relate to violations of **21 U.S.C. §§ 841(a)(1) and 846** and involve **Phillip MCKELTON, Frank CALLOWAY,** and other yet known and unknown individuals including:

- a. Evidence that shows the Device was used to further facilitate the distribution of illegal narcotics;
- b. lists of customers and related identifying information;
- c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
- d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
- e. any information recording schedules or travel;
- f. any and all stored telephone numbers;
- g. any and all text messages, to include incoming, outgoing, saved, deleted, and drafts;
- h. Any and all emails, sent, received, delete, draft and/or saved;
- i. any and all voicemails;
- j. any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device;
- k. Any and all data retrieved from Apps on the device;
- l. any and all entries made in a calendar and/or notebook feature;
- m. any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2.      Evidence of user attribution showing who used or owned the Subject Telephones at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.